UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
REYNARD A. GROSSI,                     )
                                       )
    Petitioner,                        )
                                       )
v.                                     )     Civil Action No. 05-11522-NMG
                                       )
DAVID NOLAN,                           )
                                       )
    Respondent.                        )
_____)

**RESPONDENT DAVID NOLAN'S MEMORANDUM OF LAW
IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

    Respondent David Nolan respectfully submits this memorandum of law in opposition to Petitioner Reynard A. Grossi's petition for a writ of habeas corpus.

    The petitioner in this habeas corpus proceeding, who was convicted of second-degree murder, sets forth a single claim in his petition. He alleges that his right to due process was infringed by the trial court's refusal to instruct the jury on a lesser-included offense. On direct appeal, the Massachusetts Appeals Court carefully considered this argument, but ultimately rejected it. Because the Appeals Court's resolution of this issue was neither contrary to, nor an unreasonable application of clearly established Supreme Court law, habeas relief is not warranted. The Court should deny the petition.

## **BACKGROUND**[1]

I.   **Facts**

When considering a habeas corpus petition, findings of fact made by the state court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends to factual determinations made by both state trial and appellate courts, *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002), as well as to any factual findings implicit in the state courts' rulings. *See Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F. Supp. 2d 509, 514 (D. Mass. 1999). A habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000).

In this case, the Appeals Court found the following facts with respect to the petitioner's offense:

> In the spring of 1999, the defendant [*i.e.*, the petitioner] was living at 20 West Street, Newton, with his then girl friend, Lisa Ford. They had a ten year old son together. In mid-May, the defendant met Nicole Mahoney and started seeing her. In June, the defendant moved in with Mahoney in Waltham.
>
> On June 18, 1999, at about 9:00 P.M., the defendant and Mahoney saw the victim and Ford together outside a bar in Newton. Ford made a hand gesture to the defendant and Mahoney, holding up her middle finger. Ford and the victim then spent the evening drinking at various bars. During the course of the evening, they met one Martin Flaherty who snorted some cocaine with Ford. At about 2:15 A.M., the three returned to Ford's apartment. Flaherty,

---

[1] The information contained in this "Background" section is drawn from the state-court docket entries, briefs, and decisions included in Respondent's Supplemental Answer (the "Supplemental Answer" or "Supp. Ans."). In addition, as noted in Respondent's Supplemental Answer, the transcripts of the petitioner's state-court trial (10 volumes) are available at the Court's request.

who was very drunk, passed out on the living room couch, and Ford and the victim went up to bed.

Meanwhile, the defendant and Mahoney spent the evening in a number of bars with a group that included, among others, the defendant's friend Michael Dolan. At some time in the early morning hours, the defendant and Dolan went to an apartment belonging to other members of the group.

The group left the apartment, went to various bars and then went back to the apartment after the bars closed. While there, the defendant was seen holding an eight-inch long fish filet knife, which apparently belonged to Dolan.

At about 3:15 A.M., the defendant and Dolan left and the defendant decided to go to Ford's apartment to get some clothes that he had left there. Dolan accompanied him to Ford's apartment.

Once there, the defendant reached in an already broken window pane and unlocked the door. He went upstairs to the bedroom and found the victim in bed with Ford. He punched the victim and a fight broke out. The noise awoke the neighbors, who saw and heard a man and a woman arguing in the kitchen. The woman was Ford. The man kept kicking something that was on the floor. Both were looking at the floor. Ford said, "What are we going to do with this?" The defendant left and went to a friend's house where he was seen to have blood all over him.

The police arrived at 20 West Street and found the victim's body in the driveway. The police kicked in the door to Ford's apartment and found Ford on the floor with a large cut on her left hand. An autopsy revealed that the victim had died of blunt trauma to the head, neck and torso, caused by at least eleven blows like those from a fist or shod foot. He also had stab wounds on his lips caused by a knife, but those wounds did not cause death.

The police started searching for the defendant. He was eventually apprehended by a police officer but escaped and ran into a swamp. He was ultimately pulled out of the swamp by the police.

The defendant gave a statement to the police in which he said, among other things, that he discovered the victim in bed with Ford. He yelled at the victim and punched him in the face. According to the defendant, the victim "buffaloed" him, putting his fists together and thrusting them forward. The two men started fighting and wound up in the kitchen. The defendant said that the victim picked up a knife, and Ford grabbed it and cut her hand. The

3

> defendant told the police that then he "lost it" and "just flipped out," kicking and punching the victim in the head repeatedly.

*Commonwealth v. Grossi*, 61 Mass. App. Ct. 1107, 808 N.E.2d 1258 (2004) (unpublished Memorandum and Order Pursuant to Rule 1:28) (attached as Exhibit F to the Supplemental Answer).

## II.  Prior Proceedings

On August 12, 1999, a Middlesex County grand jury returned a single indictment against the petitioner, charging him with first-degree murder. *See* Middlesex Superior Court Criminal Docket No. MICR1999-00984 (attached as Exhibit A to the Supplemental Answer) at 1, 10; *see also* Supp. Ans., Exh. B at A-2 (copy of indictment). On October 29, 2001, following a jury trial, the petitioner was convicted of second-degree murder. Supp. Ans., Exh. A at 9. The Middlesex Superior Court sentenced the petitioner to a committed term of life in state prison. *Id.*; *see also* Mass. Gen. Laws c. 265, § 2 (prescribing punishment for second-degree murder).

The petitioner appealed, but the Appeals Court affirmed his conviction in an unpublished decision issued May 26, 2004. Supp. Ans., Exh. F. Subsequently, the Massachusetts Supreme Judicial Court ("SJC") denied the petitioner's application for leave to obtain further appellate review. *Commonwealth v. Grossi*, 442 Mass. 1106, 812 N.E.2d 922 (2004) (table) (attached as Exhibit H to the Supplemental Answer). This habeas petition followed.

## III. The Habeas Petition

In his petition, the petitioner sets forth a single claim.[2] He alleges that the trial court should have instructed the jury on the lesser-included offense of voluntary manslaughter (based on a theory of excessive use of force in self-defense). According to the petitioner, the court's failure to do so resulted in a denial of his due process rights.[3] Petition at 8. On direct appeal, the Appeals Court carefully considered this argument, but ultimately rejected it:

> The defendant filed a written request for an instruction on the crime of voluntary manslaughter based on excessive use of force in self-defense. The defendant claimed that the instruction was warranted because in the defendant's statement to the police, he stated that he fought with the victim and that the victim pulled out a knife and stabbed Ford with it. The judge refused to instruct as to excessive use of force in self-defense but did instruct on reasonable provocation.
>
> It was the theory of the defense that Dolan was the murderer. After the instructions, the defendant did not object to the failure of the judge to charge the jury on excessive use of force in self-defense, perhaps because it would have undercut his theory that Dolan killed the victim.

---

[2]      Originally, the petition included three claims. Respondent moved to dismiss the petition for failure to exhaust available state-court remedies, arguing that none of the three claims had been properly exhausted. In a Memorandum and Order dated May 26, 2006, the Court concluded that two of the petitioner's claims (Grounds One and Three of the original petition) were unexhausted, but held that the other claim (Ground Two) was exhausted. *See* Memorandum and Order (docket entry # 15) at 5-6. Accordingly, the Court gave the petitioner the opportunity to voluntarily delete his unexhausted claims and proceed solely with Ground Two; otherwise, the Court would dismiss the petition. *Id.* at 7. On July 6, 2006, the petitioner filed a motion to voluntarily dismiss his unexhausted claims in Grounds One and Three. Thus, only Ground Two remains.

[3]      The actual claim in the petition is that "the [t]rial [c]ourt committed reversible error by failing to instruct on excessive force in self-defense." Petition at 8. While this claim does not explicitly allege a federal constitutional violation, given the petitioner's *pro se* status, the Court should construe it as a due process claim. *See, e.g.*, *Restucci v. Spencer*, 249 F. Supp. 2d 33, 34-35 (liberally construing *pro se* habeas petition).

> In any event, the defendant was not entitled to the requested instruction, because the defendant was an intruder who confronted the victim, a lawful occupant, and punched the victim. *Commonwealth v. Nunes*, 430 Mass. 1, 4-5 (1999). Here, there was no evidence that demonstrated that the defendant had "reasonable ground to believe, and actually did believe that he was in imminent danger of death or serious bodily harm." *Commonwealth v. Berry*, 431 Mass. 326, 335 (2000), quoting from *Commonwealth v. Carrion*, 407 Mass. 263, 268 (1990). Therefore, the defendant did not have a right to any instruction on self-defense.[4]

Supp. Ans., Exh. F at 2.

## **ARGUMENT**

This petition for a writ of habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and therefore, review of the petition is governed by AEDPA's highly deferential standard of review. *Rashad*, 300 F.3d at 34 (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)). Under AEDPA, a federal court may not grant a writ of habeas corpus on a claim that was "adjudicated on the merits" in a state-court proceeding unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[5]

---

[4] Footnote 2 of the Appeals Court's opinion, inserted at this point, stated: "In the circumstances of this case, the instruction on reasonable provocation did not require an instruction on self-defense. *See Commonwealth v. Schnopps*, 383 Mass. 178, 180 (1981), *S.C.*, 390 Mass. 722 (1984); *Commonwealth v. LeClair*, 429 Mass. 313, 316 (1999)." (emphasis in original).

[5] Habeas relief may also be available where a state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Here, petitioner does not dispute the underlying facts regarding the lone claim in his petition; instead, he contests only the Appeals Court's resolution of the legal issue. Hence, only 28 U.S.C. § 2254(d)(1) is implicated in this case.

In this case, the petitioner's claim fails for two separate and independently sufficient reasons. First, there is no "clearly established Federal law, as determined by the Supreme Court" which requires that a jury in a noncapital case be instructed as to lesser-included offenses. Accordingly, habeas relief is unavailable under section 2254(d)(1), and is also barred by the doctrine established in *Teague v. Lane*, 489 U.S. 288, 301-07 (1989). Second, even if such a right existed, the petitioner would only be entitled to a lesser-included offense instruction if one was warranted by the evidence at trial. Here, the Appeals Court concluded that the evidence did not support a manslaughter instruction based on a theory of excessive use of force in self-defense. Because its conclusion was not objectively unreasonable, the petitioner cannot obtain habeas relief.

**I.    Habeas Relief is Unavailable on the Petitioner's Claim Because there is No Clearly Established Supreme Court Law Which Requires that a Jury in a Noncapital Case be Instructed as to Lesser-Included Offenses.**

Under 28 U.S.C. § 2254(d)(1), "clearly established law as determined by [the Supreme] Court 'refers to holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams, v. Taylor*, 529 U.S. 362, 412 (2000)) (emphasis added). Under this definition, there is no "clearly established Federal law, as determined by the Supreme Court" sufficient to warrant habeas relief for the type of claim alleged by the petitioner in this case. More specifically, there is no Supreme

7

Court case which recognizes a due process right to a lesser-included offense instruction in a noncapital case.[6]

To be sure, the Supreme Court has held that a defendant in a capital case has a due process right to a lesser-included offense instruction where one is supported by the evidence. *Beck v. Alabama*, 447 U.S. 625, 627 (1980); *see also Hopper v. Evans*, 456 U.S. 605, 611 (1982). Importantly, however, the Court limited its holding in *Beck* to capital cases, expressly declining to address whether the rule it announced also applied in noncapital cases. *Beck*, 447 U.S. at 638 n.14 ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case."); *see also Paulding v. Allen*, 393 F.3d 280, 283 (1st Cir. 2005) ("*Paulding II*") (recognizing that *Beck* reserved the issue of whether its holding applied in noncapital cases); *Tata v. Carver*, 917 F.2d 670, 671 (1st Cir. 1990) (same); *Paulding v. Allen*, 303 F. Supp. 2d 26, 31 (D. Mass. 2004) ("*Paulding I*") (same).

Since *Beck*, the various federal circuits have divided over whether *Beck*'s holding should be extended to noncapital cases. *See Lattimore v. DuBois*, 152 F. Supp. 2d 67, 90 (D. Mass. 2001) (describing the different views taken by the circuit courts), *rev'd on other grounds*, 311 F.3d 46 (1st Cir. 2002).[7] The Supreme Court has not resolved this

---

[6]    The petitioner was not facing the death penalty in this case. While the Massachusetts statute stating the punishment for murder prescribes a punishment of death, Mass. Gen. Laws c. 265, § 2, the maximum penalty is life imprisonment without the possibility of parole because, in *District Attorney for Suffolk Dist. v. Watson*, 381 Mass. 648, 411 N.E.2d 1274 (1980), the SJC held that the state death penalty statute violated article 26 of the Massachusetts Declaration of Rights.

[7]    Of the circuits, only one—the Third Circuit—has extended *Beck* to noncapital cases. *See Lattimore*, 152 F. Supp. 2d at 90 (citing *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027-28 (3rd Cir. 1988)). Four others—the Fifth, Ninth, Tenth, and Eleventh Circuits—have

circuit split. Thus, there is no clearly established Supreme Court law recognizing the alleged due process right the petitioner relies on here. Because no such right has been clearly established by the Supreme Court, habeas relief is unavailable under 28 U.S.C. § 2254(d)(1). *See Paulding II*, 393 F.3d at 283 ("Because the Supreme Court has not decided whether a noncapital defendant has a due process right to receive such an instruction, some courts, applying AEDPA, have held that a habeas petition must be dismissed as not clearly established under federal law.") (citing cases); *Paulding I*, 303 F. Supp. 2d at 31 (holding that Supreme Court's failure to decide whether *Beck* applied in noncapital cases, along with split among lower courts on the issue, precluded habeas relief under section 2254(d)(1)); *Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001) (holding that because "no clearly established Supreme Court authority requires lesser-included offense instructions in non-capital cases," such a claim cannot be the basis for relief under AEDPA); *Mannix v. Phillips*, 390 F. Supp. 2d 280, 295 (S.D.N.Y. 2005) (same); *Leary v. Garraghty*, 155 F. Supp. 2d 568, 574 (E.D. Va. 2001) (same).[8]

---

concluded that failure to instruct on lesser-included offenses in a noncapital case does not present a federal constitutional question. *See Lattimore*, 152 F. Supp. 2d at 90 (citing *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Trujillo v. Sullivan*, 815 F.2d 597, 602 (10th Cir. 1987); *Perry v. Smith*, 810 F.2d 1078, 1080 (11th Cir. 1987); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984)). Meanwhile, four others—the First, Sixth, Seventh, and Eighth Circuits—"have taken a middle approach, holding that the failure to give an instruction on a lesser-included offense does not violate the Constitution unless it amounts to a fundamental miscarriage of justice." *See Lattimore*, 152 F. Supp. 2d at 90 (citing *Tata*, 917 F.2d at 671; *Bagby v. Sanders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *Robertson v. Hanks*, 140 F.3d 707, 710 (7th Cir. 1998); *Deberry v. Wolff*, 513 F.2d 1336, 1338 (8th Cir. 1975)).

[8]   As noted, in *Paulding I*, this Court held that habeas relief is unavailable under section 2254(d)(1) for claims like the one made by the petitioner in this case. *Paulding I*, 303 F. Supp. 2d at 31. On appeal, in *Paulding II*, the First Circuit recognized that other courts had come to the same conclusion, but also acknowledged that a few courts, "even

In addition, the Supreme Court's decision in *Teague v. Lane* also precludes relief on the petitioner's claim. *Teague* bars habeas relief in cases where a petitioner relies on a new rule of constitutional law established after his conviction became final.[9] *Teague v. Lane*, 489 U.S. 288, 301-07 (1989). In this case, the petitioner seeks to establish a new rule of constitutional law, namely that noncapital defendants have a due process right to a lesser-included offense instruction. As other courts have recognized, *Teague* prohibits relief on such a claim. *See Jones v. Hoffman*, 86 F.3d 46, 48 (2nd Cir. 1996); *Turner v. Marshall*, 63 F.3d 807, 818-19 (9th Cir. 1995), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (en banc); *Leary*, 155 F. Supp. 2d at 574.

---

after AEDPA's passage, have permitted a noncapital defendant to press such a claim." *Paulding II*, 393 F.3d at 283 (citing cases). Notably, however, as the First Circuit observed, the courts that have allowed noncapital defendants "to press such a claim" have done so "without explicit consideration of whether their analysis is consistent with AEDPA". *Id.* Ultimately, the First Circuit chose to avoid the issue, concluding that even if noncapital defendants had a due process right to a lesser-included offense instruction, the instruction needed to be supported by the evidence at trial, and in that case, the state court reasonably concluded that the evidence did not support such an instruction. *See id.* at 283-84. While *Paulding II* resolved the issue on a narrower ground, it did not purport to reverse the holding made by the district court in *Paulding I*. For the reasons described previously, the Court should follow *Paulding I* and hold that relief on the petitioner's claim is unavailable under section 2254(d)(1) because there is no clearly established Supreme Court law recognizing the right of a noncapital defendant to a lesser-included offense instruction.

[9]     There are two narrow exceptions to *Teague*'s bar; habeas relief may be available if the new rule either (1) "places a class of private conduct beyond the power of the state to proscribe," or (2) "is a 'watershed rule' of criminal procedure, implicating the fundamental fairness and accuracy of the proceeding." *Horton v. Allen*, 370 F.3d 75, 83 (1st Cir. 2004) (citing *Teague*, 489 U.S. at 310-11). Neither exception applies here.

## II. Habeas Relief is Not Warranted Here Because the Appeals Court's Conclusion was Not Contrary to, or an Unreasonable Application of Clearly Established Supreme Court Law.

Next, even if the type of due process claim advanced by the petitioner could serve as the basis for habeas relief, relief still would not be warranted here, as the Appeals Court's decision was not contrary to, or an unreasonable application of clearly established Supreme Court law.

### A. This court's review of the Appeals Court's decision is limited and highly deferential.

As noted, under AEDPA, a federal court may not grant a writ of habeas corpus on a claim that was "adjudicated on the merits" in a state-court proceeding unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This provision constrains federal courts' ability to grant habeas relief in two significant ways.

First, it restricts the source of the rule of decision in habeas cases. In particular, the rule of decision must come from a Supreme Court case (or cases) decided before the relevant state-court decision. *See* 28 U.S.C. § 2254(d)(1); *Yarborough*, 541 U.S. at 660-61; *Williams*, 529 U.S. at 412. And equally important, the rule relied on by the petitioner must be "clearly established Federal law," meaning that it must be a holding (*i.e.*, not dicta) drawn from the Court's decisions. *See Yarborough*, 541 U.S. at 660-61; *Williams*, 529 U.S. at 412.

Next, as the statutory language makes plain, AEDPA also requires that federal courts use a "highly deferential standard for evaluating state-court rulings, [and] demands that state court decisions be given the benefit of the doubt." *Woodford v.*

11

*Visciotti*, 537 U.S. 19, 23 (2002) (*per curiam*) (citation omitted). More specifically, habeas relief may not be granted unless the state-court decision at issue is either "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law.

### 1. The "contrary to" prong

The "contrary to" prong "embraces cases in which a state court decision directly contravenes Supreme Court precedent." *Williams v. Matesanz,* 230 F. 3d 421, 424 (1st Cir. 2000). A state-court decision is "contrary to" the Supreme Court's clearly established precedents if it either applies a rule that contradicts the governing law set forth in the Court's cases, or resolves a case differently from the Court on a set of materially indistinguishable facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*) (quoting *Williams*, 529 U.S. at 405). Under either scenario, in order for a state-court decision to be "contrary to" the Supreme Court's clearly established law, the decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court law. *Williams*, 529 U.S. at 405. Relief under the "contrary to" prong requires identification of controlling Supreme Court precedent and a ruling that the identified precedent demands a particular outcome, *i.e.*, one contrary to that reached by the state court. *See Williams*, 230 F. 3d at 425; *O'Brien v. Dubois*, 145 F.3d 16, 26 (1st Cir. 1998). The key inquiry is whether the relevant Supreme Court decision "can fairly be said to <u>require</u> a particular result in a particular case." *O'Brien*, 145 F.3d at 25 (emphasis added).

### 2. The "unreasonable application of" prong

A state-court decision "involve[s] an unreasonable application of" the Supreme Court's clearly established precedents if the state court identifies the correct governing

12

legal principle from the Court's decisions, but applies it in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (citing *Williams*, 529 U.S. at 409). The Supreme Court has cautioned that "[a]n <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). Indeed, in order for habeas relief to be appropriate under the "unreasonable application" prong, a state-court decision must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.") (citations and internal quotation marks omitted); *Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001) (noting that under AEDPA's deferential standard, "a federal court cannot grant habeas relief simply because it disagrees with or finds error in the state court's application of federal law"). As the First Circuit has recognized, the requisite demonstration is a "daunting task for a habeas petitioner to show," because if it is even "a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *Healy v. Spencer*, 53 F.3d 21, 26-27 (1st Cir. 2006) (quoting *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (en banc)).

### B.   The Appeals Court's decision was not contrary to clearly established Supreme Court law.

As noted, a state-court decision is "contrary to" the Supreme Court's clearly established precedents if it either applies a rule that contradicts the governing law set forth in the Court's cases, or resolves a case differently from the Court on a set of materially indistinguishable facts. *See Early*, 537 U.S. at 8. Here, neither of these circumstances is present.

First, there is no Supreme Court case involving materially indistinguishable facts that is contrary to the outcome here. Next, as the First Circuit has recognized, "the most that a noncapital defendant could assert under the Supreme Court's precedent is that a lesser included offense instruction is required if warranted by the evidence." *Paulding II*, 393 F.3d at 283-84; *see also Paulding I*, 303 F. Supp. 2d at 32 n.2 ("[U]nder the federal law that has been clearly established—specifically, the law applicable to capital cases—the Supreme Court has emphasized that 'due process requires that a lesser included offense instruction be given <u>only</u> when the evidence warrants such an instruction.'") (emphasis in original). Here, assuming such a rule must be applied even in noncapital cases, the Appeals Court did so, ultimately concluding that "there was no evidence" to support a manslaughter instruction based on excessive use of force in self-defense. Supp. Ans., Exh. F at 2.

### C. The Appeals Court's resolution of the petitioner's claim was not an unreasonable application of clearly established Supreme Court law.

Finally, again assuming *Beck* applies to noncapital cases, the Appeals Court's rejection of the petitioner's claim cannot fairly be characterized as an unreasonable application of *Beck*. To obtain habeas relief on this basis, the petitioner must not only establish that he was entitled to the voluntary manslaughter instruction he sought, but also demonstrate that the Appeals Court's decision to the contrary was objectively unreasonable. *See, e.g.*, *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001) (describing habeas review under AEDPA as "involv[ing] the layering of two standards"). The petitioner cannot meet this heavy burden.

The Appeals Court held that the petitioner was not entitled to a manslaughter instruction based on a theory of excessive use of force in self-defense because the petitioner had no credible claim of self-defense. Indeed, as the Appeals Court noted, "the [petitioner] was an intruder who confronted the victim, a lawful occupant, and punched the victim." Supp. Ans., Exh. F at 2; *see also id.* at 1 (noting that, in his statement to police, the petitioner admitted punching the victim in the face after discovering the victim in bed with Ford).[10] Thus, the petitioner—by his own admission—was the aggressor in his altercation with the victim. Recognizing this fact, the Appeals Court concluded that "there was no evidence that demonstrated that the [petitioner] had reasonable ground to believe, and actually did believe that he was in imminent danger of death or serious bodily harm." *Id.* at 2. Its conclusion was not objectively unreasonable, and therefore, habeas relief is not warranted.[11] *See Paulding II*, 393 F.3d at 284 (affirming denial of habeas petition where the state court "reasonably determined that the evidence did not warrant" the lesser-included offense instruction at issue).

---

[10]  The Appeals Court's determination that "the [petitioner] was an intruder who confronted the victim, a lawful occupant, and punched the victim" is a factual determination. As described above, the Appeals Court's factual findings are entitled to a presumption of correctness which can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner has made <u>no</u> showing to rebut the Appeals Court's factual finding.

[11]  In addition, as the Appeals Court observed, "[i]t was the theory of the defense that Dolan was the murderer." Supp. Ans., Exh. F at 1. In fact, "[a]fter the instructions, the [petitioner] did not object to the failure of the judge to charge the jury on excessive use of force in self-defense, perhaps because it would have undercut his theory that Dolan killed the victim."

## **CONCLUSION**

For the foregoing reasons, the Court should deny the petition for a writ of habeas corpus.

                                            Respectfully submitted,

                                            DAVID NOLAN,

                                            By his attorney,

                                            THOMAS F. REILLY
                                            ATTORNEY GENERAL

                                            /s/ Scott A. Katz
                                            Scott A. Katz (BBO # 655681)
                                            Assistant Attorney General
                                            Criminal Bureau
                                            One Ashburton Place
                                            Boston, Massachusetts  02108
                                            (617) 727-2200, ext. 2833

Dated:  September 1, 2006

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon petitioner Reynard A. Grossi, W-58492, M.C.I. Cedar Junction, South Walpole, MA 02071 by first-class mail, postage prepaid, on September 1, 2006.

                                            /s/ Scott A. Katz
                                            Scott A. Katz